UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

SONJA M. TYSON, Plaintiff,

v. Civil Action No. 3:17-cv-91-DJH-CHL

REGENCY NURSING, LLC, Defendant.

\* \* \* \* \*

## **MEMORANDUM OPINION AND ORDER**

Plaintiff Sonja Tyson brings this action against Regency Nursing, LLC, the owner and operator of Regency Center, a skilled nursing facility located in Louisville, Kentucky. (Docket No. 17) Tyson claims that while a resident at Regency, she received substandard care and suffered personal injuries as a result of Regency's negligence. Regency now moves for dismissal pursuant to the statute of limitations. (D.N. 24) Because the parties ask the Court to consider materials beyond the scope of the complaint and answer, the Court will consider Regency's motion for partial dismissal pursuant to the summary judgment standard rather than the standard applicable to motions to dismiss. And because there is a factual dispute concerning when Tyson should have known of her injuries, the Court will deny Regency's motion without prejudice.

### I.  Background

From 2010 until 2016, Tyson was a resident at Regency in Louisville, Kentucky. (D.N. 17, PageID # 83; D.N. 25, PageID # 131) In January 2016, Tyson became ill, exhibiting decreased appetite, fever, and vomiting. (D.N. 25, PageID # 133) On January 11, she was taken to the emergency room at Baptist Health Louisville. (*Id.*, PageID # 131) Baptist Health

1

diagnosed Tyson with a range of illnesses and injuries.[1]  (*Id.*)  Following her discharge from Baptist Health, Tyson did not return to Regency.

Tyson originally filed this action in Kentucky state court against Genesis Eldercare Rehabilitation Services, LLC and Defendant Regency Nursing, LLC on January 11, 2017.  (*See* D.N. 1-2)  Tyson claims that Regency "carelessly and negligently failed to provide appropriate care[,]" resulting in Tyson sustaining severe injuries in violation of Kentucky common law and Ky. Rev. Stat. § 216.515(6).  (D.N. 17, PageID # 83, 84)  She also alleges that Regency breached its agreement to provide her with adequate living assistance.  (*Id.*, PageID # 84)

On February 14, 2017, Genesis removed the action to this Court.  (D.N. 1)  Thereafter, both Genesis and Regency filed answers to Tyson's amended complaint. (D.N. 18; D.N. 19)  In light of a stipulation between the parties, the Court dismissed Tyson's claims against Genesis on September 5.[2]  (D.N. 20; D.N. 21)  Regency now moves to dismiss some of Tyson's claims pursuant to the statute of limitations.  (D.N. 24)  Specifically, Regency argues that "[t]o the extent that [Tyson's] claims for injuries arose prior to one year before the Complaint was filed, they are barred by the one year statute of limitations as set forth by [Ky. Rev. Stat.] § 413.140(1)."  (D.N. 24-1, PageID # 118)

## II.    Standard

As an initial matter, Tyson argues that Regency's motion should be treated as a motion for summary judgment under Federal Rule of Civil Procedure 56.  (D.N. 25, PageID # 130)  On a

---

[1] Regency also moves to file its reply on this issue under seal in light of its references to Tyson's private health information.  (D.N. 26)  The motion to seal is currently pending before the magistrate judge assigned to this action.  Therefore, the Court will merely describe Tyson's injuries in a general fashion, since specifics are not essential to the Court's analysis here.

[2] Tyson originally named Genesis Eldercare Rehabilitation Services, LLC as a defendant in this matter, mistakenly believing it to be an owner/operator of Regency.  (*See* D.N. 1-2)  The Court dismissed Tyson's claims against Genesis in light of an agreed order of dismissal filed by the parties.  (*See* D.N. 20; D.N. 21)

2

motion for judgment on the pleadings, "a court may accept matters outside the pleadings, but in doing so it generally must treat the motion as one for summary judgment under Rule 56."[3] *Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008) (quoting Fed. R. Civ. P. 12(d) (internal quotations omitted)); *see also Tucker v. Heaton*, No. 5:14–CV–00183–TBR, 2015 WL 3935883, at *2 (W.D. Ky. June 26, 2015) ("Because this document is neither contained nor referenced in the pleadings, the Court must either reject the evidence or treat the motion as one for summary judgment."). "Where one party is likely to be surprised by the proceedings, notice is required, but generally, whether notice of conversion of a motion [for judgment on the pleadings] to one for summary judgment by the court to the opposing party is necessary depends upon the facts and circumstances of each case." *Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1105 (6th Cir. 2010) (alteration and internal quotations omitted). Thus, where a party has implicit notice that a motion for judgment on the pleadings might be converted into a motion for summary judgment and has had a reasonable opportunity to present materials outside the pleadings, explicit notice is not required. *See id*.

Here, Regency received implicit notice that its motion might be converted to one for summary judgment and has had a reasonable opportunity to present materials outside the pleadings. Regency's own attachment to its motion precipitated this issue. (*See* D.N. 24-2) Converting a motion to one for summary judgment without giving explicit notice is appropriate where the movant is the first to attach material outside the pleadings. *See S. Rehab. Grp., P.L.L.C. v. Burwell*, 683 F. App'x 354, 361 (6th Cir. Jan. 18, 2017) ("Not only did plaintiffs have the opportunity to respond to the relevant issue prior to the conversion, they effectively caused

---

[3] Although Regency styles its motion as a "motion for partial dismissal" (*see* D.N. 24), because Regency has filed an answer to Tyson's amended complaint, the Court will initially construe the motion as one for judgment on the pleadings pursuant to Rule 12(c).

it."). Moreover, Regency has had a reasonable opportunity to present additional materials. Tyson raised the issue of conversion in her response brief. (*See* D.N. 25, PageID # 130–31) In reply, Regency did not request time to procure additional materials. (*See* D.N. 27) *Cf. Sanders v. Bottom*, No. 5: 14-417-DCR, 2016 WL 740429, at *2 (E.D. Ky. Feb. 24, 2016) (declining to convert a motion to dismiss to one for summary judgment where "[t]he plaintiffs requested additional time to take discovery before adjudication of the motion"). In fact, Regency attached additional material outside the pleadings to its reply, signaling acquiescence to Tyson's request that the motion be treated as one for summary judgment. (*See* D.N. 27-1) In short, Regency cannot claim to be surprised by the Court's conversion of its motion.[4]

Nor is notice required as to Tyson. Tyson cannot claim surprise given that it was Tyson who argued that the motion should be treated as one for summary judgment. (D.N. 25, PageID # 130) Moreover, Tyson had a reasonable opportunity to present materials outside the pleadings, evidenced by the fact that she attached five exhibits to her response. (*See* D.N. 25-1; D.N. 25-2; D.N. 25-3; D.N. 25-4; D.N. 25-5) In her response, Tyson does not request time to procure additional materials. She merely argues that she "should be given a reasonable opportunity to present all material pertinent to the motion." (D.N. 25, PageID # 130) In considering the attached exhibits, the Court is granting Tyson such an opportunity. The Court will therefore treat Regency's motion as one for summary judgment. The standard applied to a motion for summary judgment is different from the standard applied to a motion to dismiss.

In order to avoid dismissal under Rule 12 for failure to state a claim, "a complaint must [merely] contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

---

[4] Additionally, because Regency "provided comprehensive counter arguments" to the dispositive issues raised in Tyson's response, Regency had "adequate opportunity to respond to the issues considered by [this Court] in [denying] summary judgment *sua sponte*." *S. Rehab. Grp.*, 683 F. App'x at 360–61.

plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).[5]  In contrast, summary judgment will be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On a motion for summary judgment, the movant "bears the initial responsibility of informing the district court of the basis for its motion[] and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may do so by merely showing that the nonmoving party lacks evidence to support an essential element of its case for which it has the burden of proof. *See id.*

If the moving party satisfies this burden, the nonmoving party must point to specific facts in the record demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). To survive a motion for summary judgment, the nonmoving party must establish a genuine issue of material fact with respect to each element of each of its claims. *Celotex Corp.*, 477 U.S. at 323 (1986) (noting that "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial"). The mere existence of a scintilla of evidence in support of the nonmoving party's position will be insufficient; instead, the nonmoving party must present evidence upon which the jury could reasonably find for it. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996) (citing *Anderson*, 477 U.S. at 252). Still, the Court must view the evidence in the light most favorable to the

---

[5] Under Rule 12's plausibility standard, the result outlined below would be the same. To dismiss pursuant to the statute of limitations, the Court would have to conclude that Tyson's complaint "shows on its face that relief is barred by the affirmative defense of the statute of limitations." *Ragsdale v. Logan's Roadhouse*, No. 5:15–CV–00157, 2015 WL 4945810, at *1 (W.D. Ky. Aug. 20, 2015). The Court cannot reach that conclusion.

5

nonmoving party. *Loyd v. Saint Joseph Mercy Oakland*, 766 F.3d 580, 588 (6th Cir. 2014) (citing *Anderson*, 477 U.S. at 255).

### III. Discussion

In Kentucky, personal-injury and medical-negligence claims must be commenced within one year after the cause of action accrued.[6] Ky. Rev. Stat. § 413.140(1)(a), (e). Such claims are deemed to accrue "at the time the injury is first discovered or in the exercise of reasonable care should have been discovered." § 413.140(2); *see also Harrison v. Valentini*, 184 S.W.3d 521, 524 (Ky. 2005) ("[A]ctual or constructive knowledge of the medical negligence triggers the commencement of the statute of limitations."); *Dixon v. Clem*, 404 F. Supp. 2d 961, 965 (E.D. Ky. 2005) (finding that personal-injury claims accrue when the plaintiff discovers or in the exercise of reasonable diligence should have discovered her injury (citing *Louisville Tr. Co. v. Johns-Manville Prods. Corp.*, 580 S.W.2d 497, 501 (Ky. 1979))). Additionally, "[t]he knowledge necessary to trigger the statute is two-pronged; one must know: (1) he has been wronged; and, (2) by whom the wrong has been committed." *Wiseman v. Alliant Hosps., Inc.*, 37 S.W.3d 709, 712 (Ky. 2000); *see also Dixon*, 404 F. Supp. 2d at 965 ("[Personal injury claims] begin[ ] to run from the date the plaintiff discovers or in the exercise of reasonable diligence should have discovered not only that he has been injured but also that his injury may have been caused by the defendant's conduct." (quoting *Louisville Tr. Co.*, 580 S.W.2d at 501 (internal quotations omitted))). Finally, "it is the date of the actual or constructive knowledge of the injury" (i.e., "the invasion of any legally protected interest of another"), rather than harm and symptoms, "which triggers the running of the statute of limitations." *Wiseman*, 37 S.W.3d at

---

[6] Tyson's claim under Ky. Rev. Stat. § 216.515(6) is also subject to the one-year statute of limitations applicable to personal-injury claims. *See Overstreet v. Kindred Nursing Ctrs. Ltd. P'ship*, 479 S.W.3d 69, 76 (Ky. 2015).

712; *see also Runkle v. Fleming*, 558 F. App'x 628, 635 (6th Cir. 2014) ("*Wiseman* thus stands for the proposition that for medical negligence claims, 'in order to trigger the statute of limitations, a plaintiff must discover the injury—the invasion of a legally protected interest.'" (quoting *Wiseman*, 37 S.W.3d at 713)).

Regency argues that Tyson is barred from pursuing any claim based on injuries she discovered, or with reasonable care should have discovered, prior to January 11, 2016. (D.N. 24-1, PageID # 119) While this argument properly asserts the applicable legal principle, Regency does little to show that Tyson knew or should have known of her injuries before that date. Rather, Regency merely notes that, at most, Tyson was aware of some symptoms of the injuries at issue here. According to Regency's records, Tyson had been vomiting for three days with decreased appetite and a fever prior to her trip to the emergency room. (D.N. 25, PageID # 133) The records also indicate that Tyson was receiving treatment related to one of the injuries at issue here prior to her visit to Baptist Health. (D.N. 27, PageID # 153) Neither fact, however, establishes that Tyson knew or should have known both of her injuries and of the possibility that they may have been caused by Regency's negligence.[7] *See Dixon*, 404 F. Supp. 2d at 965; *see also Imes v. Touma*, 784 F.2d 756, 758 (6th Cir. 1986) (applying Kentucky law and finding that "[w]hen the injury would not necessarily indicate the presence of negligence, the cause of action accrues when the plaintiff knows or should have known of the possible negligence"); *Bentley v. Highlands Hosp. Corp.*, No. 15-97-ART, 2016 WL 7234757, at *5 (E.D. Ky. Dec. 13, 2016) ("The timer on [plaintiff's] medical-negligence claim therefore started not when she was first

---

[7] Regency also argues that "Tyson's claim that she sustained painful injuries is inconsistent with her statements that she did not even know about those injuries until she was admitted to the hospital on January 11, 2016." (D.N. 27, PageID # 153) Yet the fact that Tyson was aware of painful symptoms does not mean she was similarly aware that Regency might have caused those symptoms.

aware of her [condition]. Rather, the clock began on the day [the plaintiff] knew or should have known that the defendants' conduct 'may have' contributed to the extent of her [condition]." (citing *Louisville Tr. Co.*, 580 S.W.2d at 501)).

> *Wiseman* is particularly instructive. There, the Kentucky Supreme Court noted that
>
>> while [the plaintiff] may have suspected that something went wrong during the surgery, that in and of itself was insufficient to accrue a cause of action. One who possesses no medical knowledge should not be held responsible for discovering an injury based on the wrongful act of a physician.

*Wiseman*, 37 S.W.3d at 712–13. Here, while Tyson might have been aware that something was wrong given her symptoms, Regency has not established that she knew or should have known that her symptoms stemmed from injuries sustained as a result of Regency's alleged negligence. Moreover, Tyson should not be held responsible for discovering injuries that Regency itself could not identity. On the Transfer/Discharge Report prepared by Regency prior to Tyson's visit to Baptist Health, the injuries at issue here were not listed. (*See* D.N. 25, PageID # 131) It would be unreasonable to find that Tyson, an individual with no specialized medical knowledge, should have known of her injuries when those injuries were not recognized by the medical professionals assigned to care for Tyson. *See Wiseman*, 37 S.W.3d at 712–13.

Thus, viewing the record in the light most favorable to Tyson, *see Loyd*, 766 F.3d at 588, there remains a material fact in dispute as to whether the symptoms Tyson experienced in the days leading up to her emergency-room visit should have indicated to her that Regency's negligence might have caused her injuries. In situations similar to the one presented here, the Sixth Circuit and this Court's sister court have consistently found summary judgment to be inappropriate. *Imes*, 784 F.2d at 759 (applying Kentucky law and finding that "[w]hether the plaintiff . . . should have known that the injury was a result of negligence is a fact question which should not have been decided by summary judgment"); *Bray v. Husted*, 11 F. Supp. 3d 854, 859

(E.D. Ky. 2014) ("[W]hether [the plaintiff] knew or should have known [of her injuries] is a factual question, and the Court will therefore deny [the defendant's] motion [for summary judgment]."); *Williams v. Altman, McGuire, McClellan & Crum, P.S.C.*, No. 12–131–ART, 2013 WL 28378, at *5 (E.D. Ky. Jan. 2, 2013) ("[A] jury could find it reasonable for [the plaintiff] not to realize that the symptoms she experienced were the result of medical malpractice."); *Whalen v. Stryker Corp.*, 783 F. Supp. 2d 977, 981 (E.D. Ky. 2011) ("[T]he Court, at this stage of the proceedings, must accept [the plaintiff's] allegation that she had no reasonable basis to know that her injury may have been caused by [the defendant's negligent conduct].").[8]

## IV. Conclusion

There is a genuine dispute of material fact as to whether Tyson knew or should have known of the injuries she received from Regency's allegedly substandard care prior to her trip to Baptist Hospital on January 11, 2016. Because the statute-of-limitations defense is an affirmative defense and likely an absolute bar to some of Tyson's claims, however, the Court will deny Regency's motion without prejudice. *See Gould Electronics, Inc. v. Livingston Cty. Road Comm'n*, No. 09–CV–12633, 2012 WL 5817937, at *6 (E.D. Mich. May 25, 2012) ("Because the summary judgment record is not sufficiently developed to allow the Court to rule, as a matter of law, on the CERCLA statute-of-limitations issue, the Court denies, without

---

[8] Furthermore, as Tyson argues, the continuous-course-of-treatment doctrine likely applies here. "[W]here a patient relies, in good faith, on his physician's advice and treatment or, knowing that the physician has rendered poor treatment, but continues treatment in an effort to allow the physician to correct any consequences of the poor treatment, the continuous course of treatment doctrine operates to toll the statute of limitations until the treatment terminates at which time running of the statute begins." *Harrison*, 184 S.W.3d at 525. Here, Tyson received continuous treatment while at Regency from 2010 until her discharge on January 11, 2016. (*See* D.N. 25, PageID # 134) Thus, even if she knew or should have known of her injuries prior to her visit to Baptist Health, if she continued her stay at Regency in the hope that its staff would correct the injuries, then her claims did not accrue until January 11, 2016.

9

prejudice, [the defendant's] motion relative to the argument that Gould's CERCLA claim is time-barred.").

Accordingly, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** that Regency's motion to dismiss pursuant to the statute of limitations (D.N. 24) is **DENIED** without prejudice.

January 23, 2018

**David J. Hale, Judge**
**United States District Court**